UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN D.,

                        Plaintiff,

v.                                                3:18-CV-0751
                                                  (TWD)
COMM'R OF SOC. SEC.,

                        Defendant.

_____

APPEARANCES:                            OF COUNSEL:

LACHMAN & GORTON                        PETER A. GORTON, ESQ.
  Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089


U.S. SOCIAL SECURITY ADMIN.             DAVID L. BROWN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by John D. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and

Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 11 and 12.)  For the reasons set

forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion

for judgment on the pleadings is granted.  The Commissioner's decision denying Plaintiff's

disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.  RELEVANT BACKGROUND

### A.  Factual Background

Plaintiff was born in 1986, making him 26 years old at the alleged onset date and 29 years old at the date of the ALJ's decision.  Plaintiff reported completing the twelfth grade and he has past work as a driver.  Plaintiff initially alleged disability due to post-concussion syndrome.

### B.  Procedural History

Plaintiff applied for a period of disability and disability insurance benefits as well as Supplemental Security Income on August 15, 2013, alleging disability beginning March 13, 2013.  (T. 54, 65, 76-77, 174-86.) [1]  Plaintiff's applications were initially denied on December 3, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  (T. 54-85.)  He appeared at two administrative hearings before ALJ Elizabeth W. Koennecke on October 19, 2015, and January 11, 2016.  (T. 28-53.)  On January 21, 2016, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 7-27.)  On May 9, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

### C.  The ALJ's Decision

The ALJ made the following findings of fact and conclusions of law.  (T. 13-23.) Plaintiff met the insured status requirements through August 15, 2013.  (T. 13.)  He did not engage in substantial gainful activity on or since March 13, 2013, the alleged onset date.  (*Id.*)

---

[1]      The Administrative Transcript is found at Dkt. No. 10.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

His post-concussion syndrome manifested by headaches is a severe impairment. (*Id*.) He does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 14.) He has the residual functional capacity ("RFC") to perform a full range of work at all exertion levels with the following non-exertional limitations:

> [He] can engage in occasional stooping (bending, but cannot work in bright sunlight, hazardous work conditions or in concentrated exposure to heights. Mentally, he retains the ability to understand and follow simple instructions and directions, perform simple tasks independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact with all others to the extent necessary to carry out simple tasks, and handle simple, repetitive work-related stress, in that he can make occasional decisions directly related to the performance of simple tasks involving goal-oriented work, rather than work involving a production rate pace.

(*Id*.) Plaintiff is unable to perform any past relevant work, but he can perform other jobs existing in significant numbers in the national economy. (T. 21-22.) The ALJ therefore concluded Plaintiff is not disabled. (T. 22-23.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff argues the RFC determination is not supported by substantial evidence because (a) the ALJ failed to properly assess the amount of time Plaintiff would be off-task and/or absent due to his headaches; (b) the ALJ improperly required "objective evidence" for headaches/migraine (a condition which Plaintiff maintains cannot be confirmed by objective clinical testing) and the ALJ failed to recognize the supporting objective evidence; (c) the ALJ improperly weighed the opinion of Aamir Rasheed, M.D.; (d) the ALJ improperly assessed and/or relied on the opinions of neurologist Patrick Hughes, M.D., consultative examiner Cheryl Loomis, Ph.D., consultative examiner Justine Magurno, M.D., and non-examining state Agency

consultant L. Blackwell, Ph.D.; and (e) the ALJ improperly weighed the opinion of Robert Russell, Ed.D.  (Dkt. No. 11 at 9-20.)  Plaintiff also argues the Step Five determination is not supported by substantial evidence.  (*Id*. at 21.)

Defendant argues substantial evidence supports the ALJ's RFC finding, the ALJ properly evaluated the evidence in the record, and the ALJ properly evaluated Plaintiff's complaints of headaches.  (Dkt. No. 12, at 6-16.)  Defendant also argues the hypothetical question posed to the vocational expert ("VE") was proper.  (*Id*. at 17.)

On reply, Plaintiff maintains Defendant's arguments that Dr. Rasheed was not a treating source and that the ALJ afforded great weight to Dr. Loomis' opinion because of her expertise and program familiarity both constitute *post hoc* rationalization not relied on by the ALJ.  (Dkt. No. 13-1 at 1.)  Plaintiff also argues Dr. Hughes did not provide any opinion on Plaintiff's headaches.  (*Id*. at 1-2.)  Plaintiff then reiterates his argument regarding the ALJ's evaluation of his headaches and that the limitation to no production work does not address his assessed limitations regarding work pace and/or attendance.  (*Id*. at 2.)

## II.      RELEVANT LEGAL STANDARD

### A.      Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.    ANALYSIS

### A.    Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's Headaches, RFC, and Credibility

#### 1.    Applicable Law

##### a.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means

eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, 11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling 96-8p, 1996 WL 374184, at *2)).

### b. Treating Physician

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"  *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418).  However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the

claimant replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

### c.  Review of Medical Evidence

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)).  "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion."  *Greek*, 802 F.3d at 375 (citing *Burgess*, 537 F.3d at 131). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability.  *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

### d.  Evaluation of Symptoms/Assessing Credibility

In determining whether a claimant is disabled, the ALJ must also evaluate claimant's alleged symptoms.  "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial

evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that, "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's evaluation of symptoms is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

### 2. Relevant Evidence and the ALJ's Analysis

#### a. The ALJ's Analysis of the Medical Opinion Evidence

In June 2013, neurologist Dr. Hughes examined Plaintiff and indicated he had a good prognosis and a causal relationship to his injury of March 11, 2013. (T. 300.) In her decision, the ALJ noted Dr. Hughes' diagnostic impression of a mild head injury with cerebral concussion followed by post-concussive syndrome and conclusion that there was no causally-related disability with Plaintiff able to work without restrictions. (T. 15, 298, 300.) The ALJ afforded great evidentiary weight to Dr. Hughes' assessment of a lack of limitations based on his physical examination. (T. 15.)

In October 2013, Plaintiff underwent a consultative neurological examination conducted by Dr. Magurno who indicated diagnoses including post-concussion syndrome, obesity, and

tobacco abuse. (T. 320.) Dr. Magurno opined Plaintiff had moderate limitations for bending and exposure to bright light and that he should avoid heights and ladders. (T. 320.) She also noted "[m]oderate schedule disruptions due to prostrating headaches." (*Id*.) The ALJ afforded some evidentiary weight to Dr. Magurno's opinion although the reason for a limitation in bending/stooping was not stated. (T. 16.) While summarizing this opinion, the ALJ did note Dr. Magurno's indication that Plaintiff would have moderate schedule disruptions due to prostrating headaches, but did not explicitly discuss this opined limitation or indicate the weight afforded to it. (T. 16, 318-22.)

In October 2013, Dr. Loomis conducted a consultative psychiatric examination and observed intact attention and concentration and moderately impaired recent and remote memory skills most likely due to cognitive deficits. (T. 315.) Dr. Loomis diagnosed a cognitive disorder, not otherwise specified ("NOS"), and opined Plaintiff exhibited no impairment in his ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress. (T. 316-17.) She indicated Plaintiff exhibited moderate impairment in his ability to perform complex tasks independently or under supervision and that the results of the examination appeared to be consistent with cognitive problems, but this did not appear to be significant enough to interfere with his ability to function on a daily basis at that time. (T. 316.)

In November 2013, as part of the initial determination, non-examining state Agency consultant Dr. Blackwell opined Plaintiff had mild restriction of activities of daily living, no difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation of extended duration. (T. 57,

60-61, 68, 70-73.)  Dr. Blackwell indicated Plaintiff could perform in a competitive work setting and his current psychological symptoms caused little interference in his daily functioning.  (T. 61, 72.)

In her decision, the ALJ summarized Dr. Loomis' evaluation as well as Dr. Blackwell's assessment.  (T. 17-18.)  Immediately after referring to Dr. Blackwell's opinion that Plaintiff could perform in a competitive work setting with his current psychiatric symptoms causing little interference in his daily functioning, the ALJ stated she afforded great evidentiary weight to "this assessment based on Dr. Loomis' expertise and program familiarity."  (T. 17, 54-75.)  It is therefore unclear whether the ALJ meant to indicate she afforded great weight to Dr. Blackwell's opinion rather than Dr. Loomis' opinion.  (T. 17.)  The ALJ did not otherwise indicate what weight was afforded to Dr. Blackwell's opinion.  (*Id*.)

In March 2015, Dr. Russell diagnosed cognitive disorder and indicated Plaintiff's "complaints of chronic headaches and nausea may be credible, taken together these would surely interfere with his potential for sustained employment, he should be considered totally disabled."  (T. 354.)  The ALJ afforded no weight to Dr. Russell's statement about disability because it concerned a matter reserved to the Commissioner and concluded Dr. Russell "drew conclusions and made statements about matters beyond the area of his expertise."  (T. 18.)  The ALJ indicated she did afford great weight to the possibility of memory issues by limiting Plaintiff to the performance of no more than simple work.  (*Id*.)

In December 2015, Dr. Rasheed assessed posttraumatic headache and indicated Plaintiff's condition would cause pain, fatigue, diminished concentration and work pace, and the need to rest at work.  (T. 375.)  Dr. Rasheed opined Plaintiff would be off-task more than 20 percent of the day but less than 33 percent and absent two days per month with these limitations

present between July and December 2015. (T. 376.) The ALJ afforded no weight to Dr. Rasheed's assessment regarding time off-task "because it is not supported by the evidence" but she indicated weight had been assigned to the limitation on work pace in limiting Plaintiff to work without a production pace. (T. 20.)

### b. The ALJ's Consideration of Plaintiff's Headaches and Her Evaluation of Plaintiff's Alleged Symptoms

The ALJ found Plaintiff has a severe impairment of post-concussion syndrome manifested by headaches and the RFC to perform a full range of work with non-exertional limitations. (T. 13-14.) The ALJ indicated Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible and noted he was not compliant with medication, "although he alleged that he could not comply because worker's compensation refused to pay for it. Later, he did take medication, but did so irregularly. The issue of compliance may have been voluntary to a degree and, to that extent, raises doubts about the severity of the symptoms." (T. 20.)

The ALJ also noted "[c]entral to determination of [Plaintiff's] retained abilities is the issue of severity and frequency of the headaches" and "all of the information in evidence is subjective, especially since no medical provider observed [Plaintiff] with any signs of a headache in an office setting that they believed." (T. 20.) Noting observations by Dr. Russell[2] and Dr. Wood[3] as well as the sympathetic statements from Plaintiff's friends and family,[4] the ALJ

---

[2]     The ALJ recounted that Dr. Russell noted Plaintiff had complained about getting headaches from too much sunlight, but indicated his office "'was filled with sunlight and [Plaintiff] did not ask to have the drapes closed.'" (T. 20, 350.)

[3]     In June 2013, Dr. Wood examined Plaintiff and noted "[h]e leaves to vomit once during the exam, which I believe to be falsified largely in an attempt to convince me that he is really feeling ill, which he does not need to do whatsoever." (T. 291-92, 308-09, 339-40.)

[4]     In determining Plaintiff's RFC, the ALJ noted the third-party statements from two of Plaintiff's friends as well as his spouse. (T. 17-18, 259-67.) The ALJ afforded little weight to

indicated there were "too many negative credibility findings to accord full weight to [Plaintiff's] subjective reports regarding the intensity and frequency of his headaches." (T. 20, 350.) The ALJ then noted the RFC included limits to exposure to sunlight and hazards, limitations to "stooping in case that might exacerbate the problem[,]" and limitations to "unskilled work not involving production pace to address any memory and concentration deficits." (T. 20.)

### 3. Analysis

Plaintiff argues the RFC determination is not supported by substantial evidence and the ALJ failed to properly consider Plaintiff's headaches. (Dkt. No. 11 at 9-20; Dkt. No. 13-1 at 1-2.) The Court does not find these arguments persuasive for the following reasons.

Although Plaintiff maintains the ALJ failed to include the appropriate time off-task and/or attendance on account of headaches in the RFC determination and cites to Dr. Rasheed's opinion that Plaintiff would be off-task more than 20 percent of the day and absent two days per month, the Court does not find support for this argument in the record. (Dkt. No. 11 at 9.) Plaintiff also cites to the opinions of Dr. Russell and Dr. Magurno and indicates that no other opinions assess the severity or frequency of Plaintiff's headaches or resulting limitations to staying on task and/or attendance. (*Id*. at 10-11.) Plaintiff contends "the ALJ's contrary conclusion that Plaintiff has no limitation to attendance or staying on task is not supported by substantial evidence and constitutes the improper substitution of her lay opinion for that of competent medical opinion." (*Id*. at 11.)

---

these statements "because all were sympathetic parties, some of whom relied on what [Plaintiff] told them. None were medical personnel and while their observations are not questioned, their statements are necessarily of less value than those of treating and other medical sources." (T. 18, 20.)

The Court's review indicates the ALJ adequately considered the severity and frequency of Plaintiff's headaches, properly assessed the opinions from Dr. Rasheed, Dr. Russell, and Dr. Magurno, and provided sufficient explanation, supported by the record evidence, for her analysis. (T. 15-21.) The ALJ explained that she limited Plaintiff to unskilled work not involving production pace to address any memory and concentration deficits. (T. 20.) Additionally, her overall analysis indicates she did not conclude he had no limitation to attendance or staying on task, but ultimately found "[a]dditional limitations are not supported." (*Id*.)

The ALJ's review of the record and consideration of Plaintiff's headaches (and related symptoms) are indicated by her summary of and citation to the medical records throughout her decision. (T. 15.) For example, in noting Plaintiff's treatment with Dr. Wood at a concussion center in March and April 2013, the ALJ noted Plaintiff's headaches "were his most prominent symptoms" and he complained of being strongly photophobic. (T. 15, 277-78.) The ALJ noted Plaintiff returned to see Dr. Wood in May 2014 and "sat uncomfortably in the room with the light off, seemed very despondent and to be in pain from the light." (T. 17, 323.) The ALJ also noted Plaintiff saw Dr. Wood in February 2015 and reported gait disturbance, headache, hearing loss, irritability and memory difficulty, but he "did not appear in acute distress and had no abnormal neurological or psychiatric findings." (T. 18, 359-61.) The ALJ further took note of Plaintiff's September 2013 function report in which he reported daily pain brought on by paperwork, loud noise, and watching movies with sudden lights flashing. (T. 16, 222-33.)

Plaintiff reported to Dr. Wood in October 2013 that his headaches were slightly better (though he had significant neck pain) and his headaches were helped with Pamelor and Topamax. (T. 306.) The ALJ again noted light and noise bothered Plaintiff's head and his

headaches were worse with temperature, loud noise, bright light, bending, and contact to his head, per his report to Dr. Magurno in October 2013. (T. 16, 318.) The ALJ's RFC takes these notes and Dr. Magurno's resulting opinion into account in ultimately limiting Plaintiff to occasional stooping (bending), with no work in bright sunlight, hazardous work conditions or in concentrated exposure to heights. (T. 14, 320.)

The Court is also not persuaded by Plaintiff's argument that the ALJ discounted the severity and frequency of his headaches by claiming they were not supported by objective evidence and Plaintiff's normal exam findings. (Dkt. No. 11 at 12-16.) Similarly, Plaintiff also contends the ALJ substituted her judgment for that of Dr. Russell and took Dr. Wood's comment out of context to make an improper inference. (*Id*. at 16, 20.) Plaintiff maintains Dr. Russell tested for malingering or faking and found no such evidence and felt Plaintiff's complaints were credible. (*Id*.) Plaintiff also maintains that neither Dr. Wood nor any other treating provider ever doubted the severity or frequency of Plaintiff's symptoms. (*Id*.)

Contrary to Plaintiff's argument, the Court finds the ALJ's analysis does not indicate a substitution of her own opinion for that of Dr. Russell. In considering this opinion, the ALJ indicated the "stated purpose of the exam by Dr. Russell was to determine if [Plaintiff] had a disability" and as a person in pursuit of disability benefits, Plaintiff "would not be expected to minimize his symptoms and their adverse effect. No purpose would be served by understating allegations of pain and limitations." (T. 18.) The ALJ noted Dr. Russell indicated Plaintiff had "been credible in describing his [c]ognitive symptoms which suggests that his complaints of chronic headaches and nausea may be credible" and that "[t]aken together these would surely interfere with his potential for sustained employment. He should be considered totally disabled." (T. 18, 354.) The ALJ also noted Dr. Russell observed Plaintiff had at times complained about

getting headaches from too much sunlight; however, he noted that the office "was filled with sunlight and [Plaintiff] did not ask to have the drapes closed."  (T. 18, 350.)  In her decision, the ALJ noted an inconsistency regarding how Plaintiff's allegations about sunlight could be accepted when no problem was objectively observed, but also noted "Dr. Russell did note that his testing did not showing malingering."  (T. 18.)  The ALJ also indicated Plaintiff "was able to test with a reported headache suggesting that he could perform the mental demands of at least unskilled work with a headache" and that "Dr. Russell only noted that the complaints about headaches and nausea *might be* credible."  (T. 18 (emphasis in original), 347-54.)  The ALJ therefore concluded Dr. Russell "drew conclusions and made statements about matters beyond the area of his expertise" and gave his statement about disability no weight.  (T. 18, 354.)  The ALJ did however give "great weight to the possibility of memory issues by limiting [Plaintiff] to performance of no more than simple work."  (T. 18, 354.)

The Court is also not persuaded by Plaintiff's arguments that the ALJ took Dr. Wood's comment on Plaintiff's vomiting during an office visit out of context.  (Dkt. No. 11 at 16.)  The note from Dr. Wood indicates Plaintiff may have fabricated vomiting to make his symptoms appear worse, but the ALJ also noted the full quote from Dr. Wood including that Plaintiff did not need to convince him about feeling ill.  (T. 15-16, 291-92.)  The ALJ indicated Dr. Wood did not believe Plaintiff's need to leave the appointment to vomit, which the record supports.  (T. 20.)  This conclusion by the ALJ therefore does not misconstrue the treatment note wholesale. (*Id.*)

For the reasons indicated above, the Court finds the ALJ's analysis is supported by substantial evidence in her review of the medical evidence and Plaintiff's complaints.  (T. 15-

21.)  Her conclusions regarding the assessments from Dr. Wood and Dr. Russell are similarly supported.  (T. 15-16, 18, 20.)

The Court is somewhat troubled by the ALJ's statement that "all of the information in evidence is subjective, especially since no medical provider observed [t]he claimant with any signs of a headache in an office setting that they believed."  (T. 20.)  This conclusion does not appear to be completely accurate; again, however, the Court does not find the ALJ wholly mischaracterized the evidence of record or failed to properly consider Plaintiff's headaches. Although Plaintiff's headaches are well-documented in the record, the Court finds the ALJ's overall decision is supported by substantial evidence because the record does not support further limitations than those found in the ALJ's RFC determination.  (T. 57, 60-61, 68, 70-73, 274, 276, 282, 288-89, 295, 298-300, 302, 316, 320, 332-33, 346, 357-58, 361, 366, 370-71, 373.)

To be sure, the entirety of the evidence in the record is not merely subjective including moderately impaired recent and remote memory skills noted by Dr. Loomis and memory impairment and cognitive disorder assessed by Dr. Russell.  (T. 315, 354.)  However, the ALJ's overall decision does not indicate she found all of the evidence subjective or otherwise unbelievable.  For example, the ALJ questioned how Plaintiff's allegations about sunlight could be accepted when no problem was objectively observed, but nevertheless included a limitation that he could not work in bright sunlight in the RFC.  (T. 14, 18.)  There is also at least some evidence supporting Plaintiff's claims of post-concussion syndrome manifested by headaches, as clearly seen in the ALJ's findings that this impairment was severe and that Plaintiff has an RFC with non-exertional limitations.  (T. 13-14, 300, 320.)

The ALJ's analysis regarding Plaintiff's RFC and evaluation of symptoms indicates she could not afford full weight to Plaintiff's subjective reports concerning the intensity and

frequency of his headaches. (T. 14-21.) This analysis reflects a full review of the record including the medical evidence and opinions and Plaintiff's subjective reports and hearing testimony. The record does not support further limitations than those indicated by the ALJ's RFC. (T. 14.) For example, although Plaintiff's subjective complaints of headaches are well-documented and his work-related head injury in 2013[5] seems to have been substantiated, CT scans of his brain/head have consistently been noted to be negative. (T. 289, 299, 302, 346.) Physical examinations have frequently noted him to be in no acute distress with normal neurological results. (T. 274, 276, 282, 288-89, 295, 298-300, 332-33, 357-58, 361, 366, 370-71, 373.) The Court therefore concludes that the ALJ's finding that she could not afford full weight to Plaintiff's subjective reports is supported by substantial evidence.

Plaintiff also argues the ALJ attempted to revive the discredited "sit and squirm" test in relying on her own observations from the administrative hearing. (Dkt. No. 11 at 13.) The ALJ did indicate that during Plaintiff's hearings he did not wear special glasses, was attentive, and did not appear in distress. (T. 20.) However, Plaintiff's demeanor is relevant to the ALJ's analysis as he testified he has daily consistent headaches which get better or worse as the day goes on without improvement from medications. (T. 46-47, 50.) Further, Plaintiff's demeanor at the hearings was not the ALJ's only basis for her adverse determination regarding the assessment of Plaintiff's symptoms. (T. 20.) For example, the ALJ indicated Plaintiff was not compliant with medication but noted "he alleged he could not comply because worker's compensation refused to pay for it. Later, he did take it, but did so irregularly. The issue of compliance may have been

_____

[5]       The record indicates Plaintiff had a prior head injury in 2008 or 2009, although it does not appear this was reported to all of the examiners or treating providers as many of the examination notes mention only the March 2013 injury. In July 2015, Dr. Rasheed noted a history of concussion from 2008. (T. 274, 295, 299, 314, 318, 349, 372-73.)

voluntary to a degree and, to that extent, raises doubts about the severity of the symptoms." (T. 20.) Indeed, Dr. Wood noted Plaintiff's issues with compliance and coverage for medication with Plaintiff subsequently taking medication intermittently with limited benefit. (T. 308, 310-11, 325, 329.) The ALJ also noted "[o]n several occasions, comments in the treatment notes reflect that he was not in acute distress and sitting comfortably." (T. 20.) The Court's review finds support for this conclusion. (T. 274, 276, 282, 288-89, 295, 298-300, 332-33, 357-58, 361, 366, 370-71, 373.)

Plaintiff further maintains the ALJ improperly weighed Dr. Rasheed's opinion by giving it no weight on the issue of time off-task and purporting to account for Plaintiff's limitations to work pace by limiting him to work without a production pace. (Dkt. No. 11 at 17-19.) Plaintiff also argues the ALJ failed to assess this opinion under the treating physician rule and that this opinion on time off-task should be given controlling weight or more than no weight. (*Id*. at 17-18.) Plaintiff contends the ALJ did not provide good reasons for discounting Dr. Rasheed's opinion and offered only one conclusory sentence in stating this opinion was not supported by the evidence. (*Id*.; T. 20.)

The Court disagrees. The ALJ's decision includes a summary of Plaintiff's July 2015 visit[6] with Dr. Rasheed at Neuro Medical Care and Dr. Rasheed's subsequent December 2015 opinion on Plaintiff's condition and resulting limitations. (T. 18-20, 372-76.) Although the ALJ's analysis of this opinion is brief and does not explicitly discuss the regulatory factors (T. 20), the Court finds any error by the ALJ in failing to do so to be harmless because the ALJ's consideration of Dr. Rasheed's opinion is adequate. (*Id*.) The rationale for the weight given to

---

[6] The Court's review of the record indicates that Plaintiff returned to Neuro Medical Care in September 2015 for nerve blocks with Dr. Rasheed acting as the supervising doctor. (T. 368-71.)

Dr. Rasheed's opinion is clear within the ALJ's overall analysis including the ALJ's indication that it was not supported by the evidence. (*Id.*) Although not cited by the ALJ, the Court notes that, in July 2015, Dr. Rasheed noted Plaintiff was sitting comfortably and was not currently on any medication with a neurologic examination not revealing any focal or corticospinal issues. (T. 373.) In September 2015, Doreen Yirenchi, FNP-C, (under supervision of Dr. Rasheed) indicated Plaintiff was sitting comfortably during the examination and did not appear to be any acute distress though he was noted to be wearing dark shades. (T. 370.) Although the ALJ does not identify Dr. Rasheed as a treating physician, she did note Doreen Yirenci, FNP-C, "for Dr. Rasheed" saw Plaintiff in September 2015. (T. 19.) The ALJ's summary of Plaintiff's treatment at Neuro Medical Care in July and September 2015 indicates she was aware of such treatment and the basis for Dr. Rasheed's opinion. (T. 18-20.)

Plaintiff next argues the ALJ improperly assessed and/or relied on the opinions of Dr. Hughes, Dr. Loomis, Dr. Magurno, and Dr. Blackwell. (Dkt. No. 11 at 19-20.) Specifically, Plaintiff maintains it was error to give great evidentiary weight to Dr. Hughes' assessment of a lack of limitations based on his physical examination of Plaintiff because Dr. Hughes did not assess or provide any opinion on Plaintiff's headaches. (*Id*. at 19.) Plaintiff also maintains Dr. Hughes' opinion cannot be considered contrary to those of Dr. Russell, Dr. Rasheed, and Dr. Magurno because it has no bearing on the primary issue in this case, was rendered only a few months after Plaintiff's injury, and fails to take into consideration Plaintiff's ongoing treatment records. (*Id.*)

However, as Defendant points out, Dr. Hughes necessarily considered Plaintiff's medical history of headaches, nausea, and vomiting and was evaluating Plaintiff for the injury which he claims caused the headaches. (Dkt. No. 12 at 7; T. 300-02.) Indeed, Dr. Hughes is a neurologist

whose assessment included Plaintiff's report that he had headaches behind his eyes and across the back of his head that were constantly present and associated with nausea, vomiting, and photophobia. (T. 298-99.) The record indicates Dr. Hughes found Plaintiff had a mild head injury with cerebral concussion followed by post-concussive syndrome; however, he also concluded Plaintiff could work without restrictions. (T. 300.) As a valid medical opinion of record, the ALJ appropriately considered and weighed this opinion within her overall analysis of Plaintiff's headaches, RFC, and assessment of symptoms. (T. 15.)

Plaintiff further contends the ALJ did not give any explanation for why Dr. Magurno's opinion was given only some evidentiary weight and did not explain why the RFC did "not account for Dr. Magurno's finding that Plaintiff would have moderate schedule disruptions due to prostrating headaches." (Dkt. No. 11 at 19-20.) Again, the ALJ's explanation is brief but sufficient within the context of her overall decision and in light of Dr. Magurno's largely normal examination with Plaintiff appearing in no acute distress during the exam. (T. 16, 318-22.) Further, the ALJ limited Plaintiff to simple work not involving a production rate pace. (T. 14.) In looking at her RFC determination and analysis, it is clear the ALJ considered the limitations opined by Dr. Magurno by including the non-exertional limitations in the RFC. (T. 14, 16.) By affording some evidentiary weight to this opinion, the ALJ indicates she found some of the opined limitations supported, but clearly did not adopt the opinion wholesale into the RFC, because it was not fully supported by Dr. Magurno's examination or the evidence of record. (T. 16, 274, 276, 282, 288-89, 295, 298-300, 332-33, 357-58, 361, 366, 370-71, 373.)

Plaintiff argues the ALJ purported to rely on Dr. Loomis' opinion but failed to specify a weight given to this opinion or evaluate it under the regulatory factors. (Dkt. No. 11 at 19.) Plaintiff maintains this opinion also does not provide substantial support for the ALJ's RFC and

cannot be considered contrary to the opinions of Dr. Russell or Dr. Rasheed because Dr. Loomis did not test or assess Plaintiff's headaches. (*Id*.) Plaintiff also indicates this opinion supports the cognitive deficits found by Dr. Russell. (*Id*.) Plaintiff additionally argues Dr. Blackwell's opinion does not provide substantial support for the ALJ's RFC determination because her review was limited to Plaintiff's psychiatric symptoms and did not consider his headaches. (*Id*. at 19-20.)

Indeed, the ALJ's failure to clearly differentiate between Dr. Loomis and Dr. Blackwell in analyzing their medical opinions makes it difficult to determine whether she meant to indicate she afforded great weight to Dr. Blackwell's opinion rather than Dr. Loomis' opinion. (T. 17.) However, the ALJ was entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. *See also Frye*, 485 F. App'x at 487; *Little*, 2015 WL 1399586, at *9. The Court also finds that the lack of clear articulation regarding the weight afforded to Dr. Blackwell's opinion as well as the confusion regarding the ALJ's consideration of the opinions from Drs. Blackwell and Loomis is harmless because the ALJ's evaluation of these opinions is made clear within the context of her overall decision and the similarities between these opinions given Dr. Blackwell's review of Dr. Loomis' examination. (T. 16-17, 61, 72, 314-17.) For example, Dr. Loomis indicated Plaintiff had cognitive problems, but this did not appear to be significant enough to interfere with his ability to function on a daily basis while Dr. Blackwell indicated Plaintiff's current psychological symptoms caused little interference in his daily functioning. (T. 61, 72, 316.)

Finally, it was within the ALJ's purview to review all the evidence before her including the various medical opinions, resolve any inconsistencies therein, and make a determination

consistent with the evidence as a whole.  *See Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y., Mar. 21, 2014) (same); *see also Quinn v. Colvin*, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016) ("'Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'") (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)); *West v. Comm'r of Soc. Sec.*, 15-CV-1042 (GTS/WBC), 2016 WL 6833060, at *5 (N.D.N.Y. Oct. 18, 2016), *Report and Recommendation adopted by* 2016 WL 6833995 (N.D.N.Y. Nov. 18, 2016) (citing *Matta*, 508 F. App'x at 56); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

For the reasons stated above, the Court finds the ALJ's analysis of Plaintiff's headaches and RFC, symptom evaluation, and her consideration of the medical opinions is supported by substantial evidence.  Remand is therefore not required on these bases.

**B.**     **The ALJ's Step Five Determination is Supported by Substantial Evidence**

The burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'"  *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved."

*McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)).  If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee*, 631 F. Supp. 2d at 211 (citing *Melligan v. Chater*, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

Here, the ALJ found there are other jobs existing in significant numbers in the national economy that Plaintiff can perform including cafeteria attendant, office helper, and stock checker/apparel.  (T. 21-22.)  Plaintiff also argues the Step Five determination is not supported by substantial evidence because the VE's testimony cannot constitute substantial evidence where the RFC/hypothetical question does not account for the full extent of Plaintiff's limitations.  (Dkt. No. 11 at 21.)  As indicated above, the Court has determined the ALJ's findings regarding Plaintiff's impairments, RFC, and symptom assessment are supported by substantial evidence.  Plaintiff has not established further limitations than those included in the ALJ's hypothetical question and RFC.  The ALJ properly relied on the VE's testimony in response to the hypothetical question reflecting the RFC and reasonably concluded that Plaintiff can perform other work in the national economy.  (T. 21-22, 33-34.)

Therefore, the Court finds the ALJ's Step Five finding is supported by substantial evidence.  Remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is

<u>**GRANTED**</u>; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is

<u>**AFFIRMED**</u>, and it is further

**ORDERED** that Plaintiff's Complaint is <u>**DISMISSED**</u>.


Dated: December 17, 2019
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge